Our next case this morning is 523-0453, People v. McCafferty. Good to see you again, Mr. Trejo. You were here yesterday, weren't you? Yes, I was. So you've got to spend a couple of days in Southern Illinois. I know. That's good to hear. Ms. Strong, are you ready to proceed? I am. Go right ahead. Please state your name for the record. I also wanted to offer my condolences about Justice Welch. I probably argued in front of him a hundred times, and everyone knew that you need to talk about a car to get his attention. That was exactly one of our conversations this morning at breakfast about cars and airplanes. My dad was a car man. We always talked about my dream car that I wanted, and he would ask, every few arguments, did you do it yet? I was like, no, I work for the government. But when I finally did it, I actually did think of him. I really did. That's awesome. I know we're not cutting into your time, but I think that's part of the grieving and healing process is to have these stories and to hear that not only did he touch the people in the court, but also the folks that came before him on a regular basis. I greatly appreciate it, and I'm sure his family would absolutely greatly appreciate that story. I've got some other doozies, too, but they're probably not appropriate. What we may need to do is have a get-together here at the courthouse and everybody just swap stories and do that.  That may be something we talk with the clerk about later today. That's a great idea. Okay, now I'll do my job. I heard that we talked about Tom Welch. We do have a job to do. Especially this one. If you're ready. Go right ahead. Hi, I'm Paige Straughan. I represent Phil McCafferty. This is a reasonable doubt argument, which I know are probably the most difficult ones you ever hear. Particularly difficult in this case because there are six counts of predatory sexual assault in an aggravated domestic. This is a situation where Phil McCafferty was the stepdad figure to this child, AZ. The allegations are different versions of predatory. You know, like penis and vagina, penis and mouth, hand on organ. A variety of those. Most of which were alleged to have happened in June of 2017 and I believe one in April of 2018. This is an odd, odd case. I want to lead with this. The jury was out longer than it took to present the evidence at the trial. They had four questions and they came back once and said they couldn't get to a verdict. To me that is a setup to explain that this wasn't an easy case. That there's no reason to question how any of these contradictions affected the jury. They absolutely did. It wouldn't have taken that long. And I understand that we have to give deference to the jury because that's their job. I also think we can't ignore the fact that in sex cases it's a whole lot different. Because of the difficulty of the jurors to even hear the evidence. I almost wish there was a separate category of reviewing reasonable doubt in cases like this. Just because of the emotional difficulty. But I'm not in charge and so that's not the law. But I go into this knowing all of that. But I wanted to make sure that you were aware that this wasn't a jury that was out for 30 minutes. They weren't out for two hours. They were out longer than the presentation of evidence. And that's important. So this situation is rife with evidence you would expect to hear but didn't. The evidence that you did hear, completely inconsistent. The complainant contradicted herself from her CAC interview to her trial testimony on really significant things. Hugely significant. Also on things that wouldn't seem like they're that important but actually are. She was contradicted by the testimony of her mother, Felicia, on pretty important things. Let's start with the most important thing. It is obviously the most graphic. AZ was very, very clear about the first time there was actual sexual intercourse between the two of them. Penis and vagina count. She was very, very clear about when it happened. She had gone with Mr. McCafferty to visit his family in Maryland where he's from. They'd flown. She claimed that the first incident happened when they returned home. Her mother wasn't at home. They returned home, just the two of them in the house. And that was the first time of actual penis and vagina penetration. In her CAC interview, she said, it was in his bedroom that he shared with her mother. And that he climbed on top of her and put his penis in her vagina. Very clear in the CAC interview that's what happened. At trial, a completely different story no one had ever heard before. This time, she said, he put her on top of him and told her to put his penis in her vagina because it would hurt less. And that hurt less thing really stood out to me. I was trial counsel, so that really stood out to me. Because we'd never heard that before and that's a level of detail that was significant enough for her to say it at trial. But never, ever, ever before. Direct 180 degree contradiction. Can you remind me, what was the time frame from the CAC interview to the date of trial? How much time? Four and a half years or so. Okay. It was significant. So, I mean, this is a child, so her memories, obviously, after four and a half years may not be, her recollection may be different. Would you agree? Absolutely. I think that can happen and I think there's room for that. I think when every single fact is contradicted, it's a different ballgame. And the fact that it's the first time that they had that particular act, when she said there was a series of events that went on for some time, the very first time, I think that's a little more memorable because it is so traumatic. It's not like she forgot if she went to the grocery store that day or not. It was pretty big stuff. I think that makes it a whole lot harder to forget and that is a big difference, 180 degrees difference between what she said at one point and what she said at another point. Many of the things that she said at trial, she'd never said before, ever. Another one, very important, she said in the CAC interview that he never used a condom, never. At trial, she said the very first time they had sex, same thing that she can't remember if she was on top or bottom, they did use a condom and it broke and there was great panic and there's no confusion about whether they used a condom. I mean, I can understand why a 12-year-old might not be real experienced in figuring that out, but it broke. They talked about it. They looked at it and Mr. McAfee was very upset. And then she described some other things like how we went to buy her a Plan B at CVS or Walgreens or whatever. She didn't know what a Plan B was and that was clear. So that's an interesting question mark about her memory about what I would describe as probably the most traumatic event of this entire thing. That's a little concerning. Another thing is they moved homes. They lived in a house on Lafayette Street for a while and then they moved into the home that they later lived in altogether. On Lafayette Street, she told in the CAC video that there was just only touching there. No actual, like, contact other than touching outside of the clothes or just touching in general. At trial, she first said there was only touching, was asked a second time. Anything else? I don't know for sure. That's what she said, I don't know for sure. She was asked a third time. That time she said, okay, there was touching outside of clothes but also inside of clothes. I guess if we'd asked six or seven or eight more times, there would have been even more, more information. Not because it's true, but because she wasn't giving the right answers to the prosecutor in front of a jury. That's why they kept asking and that's why she kept saying more. Not because it's true. That sounds like a people pleaser to me or someone who picks up on the cues pretty easily and her answers weren't satisfactory so she increased the intensity of them. The memories are so vague from her at that point, if she can change the answer just by being asked over and over again, if she's not sure, how is the jury sure? It's certainly questionable. Another really big difference between the CAC interview and the trial, she said that he made a habit of choking her. It's what he did, it's part of the thing that he did. And that plays a little bit into the aggravated domestic battery that happened on the last day that I probably won't be able to get to, but she claimed that she had bruises on her neck from that. At trial, she said not only did she have bruises, but she told her three friends about the bruises and their presence so they could see, and then he did it. She never talked about what their reaction was, which is a little peculiar. One of the people she told was Hope Burt, who was supposedly her best friend, but that's not what Hope Burt said when she testified, because she did testify, and she didn't say anything about seeing the bruise. Never had a DCFS hotline call about an 11 or 12 year old with bruises on her neck. Wouldn't have a teacher who ever said, what is going on here? Kid played softball so much that Felicia claimed that a mom called her and said, why wasn't your kid at practice one day? So she's got a relationship with moms of other players. Somebody wouldn't call up and say, what in the world was on your daughter's neck? But even better, AZ told her mom, because her mom noticed them, they were hickeys. She didn't remember her mom's reaction to that. Well, I can remember mine if I said such a thing at 11 or 12. I wouldn't be standing here today. Felicia testified she never saw anything. She had no idea, no concerns of any type. I don't think that's very credible. Now, maybe a child can mix up her memories a little bit. Maybe they change over time. But a mother who is finally told this has gone on in her house and she didn't know, I bet you she has recounted and relived every single day in that home with him trying to figure out what she missed. But she testified none of those things happened. She didn't notice there was no bruises. She never saw bruises. Also, she did allege that on the last day before all this ended, she was choked by him. She went to the doctor. She went to the doctor who noted no bruises at all. The doctor's findings did not support any penetration. There were petechiae in her throat that could have been from oral sex, but she denied oral sex to the CAC interview. And the doctor said if it had been from violent oral sex four to five days before, it wouldn't be there now when she saw her. So they had to have happened in between times, and she was never around Phil ever. So big points I just want you to look at and give a serious thought to. This one's different. This one's different, and I think that it bears really close scrutiny. So we'd ask that you reverse those convictions. Thank you. Thank you, Counselor. Any questions? No, not at this time. No questions. Thank you. Actually, I have your rebuttal time. Great. We're going to get going. The State would first like to express its condolences regarding the loss of Justice Welch. It is a great loss to the legal profession. Thank you. With that, may it please the Court, Counsel, Adam Trejo on behalf of the people of the State of Illinois. Defendant argues that the evidence was insufficient to prove him guilty of six counts of predatory criminal sexual assault and one count of aggravated domestic battery. The State takes issue with the argument presented by opposing counsel. It's basically opposing counsel is asking this Court to reweigh the evidence and substitute its judgment for that of the trial fact regarding credibility determinations. In addition to that, defendant alleges that there was no physical corroboration relating to the victim's allegations of the predatory criminal sexual assault. That is not needed. Corroboration is not needed to sustain these convictions on appeal. The testimony of one single witness is sufficient to support a conviction. Moreover, there was physical corroboration, which the State will emphasize later on in its brief. The State would also like to point out that defendant is alleging that the victim's testimony was inconsistent with a forensic interview conducted approximately four and a half years later. That forensic interview was not included on appeal. So pursuant to O'Brien, any omissions within the record are presumed to be against the appellant who has the burden to supply the record on appeal. Let me interrupt you there, counsel, because I have the CAC interview. And wasn't that supplemented at some point because there was some issue with, in fact, either the clerk's office or a technical glitch? Because I know we've had some technical glitches as well. At the time of briefing, at the time the State briefed its argument, it was not on appeal. And I'd like to emphasize that the attorney who briefed this case is no longer within the office, and I am arguing this off-brief. I got the record and the briefs. And so at the time of briefing, it was not on appeal. But it's possible that subsequent to briefing that it was, in fact, supplemented. Is that correct? That is possible. But even if this court reviews the forensic interview, those differences between the testimony, that's up for the char of fact to weigh the inconsistencies and determine based is this victim credible or not. And as opposing counsel highlighted, the jury took its time. The jury took its time to review the evidence, to review the interview, to review the statements. This wasn't quick and easy guilty. Members of the jury, it is not. They reviewed all the evidence and determined that this victim was credible. And I'd like to highlight the physical corroboration that coincided with her testimony. On April 7th, the victim testified that the defendant made her have oral and penetrative sex. On April 8th, the next day, the defendant choked her because the victim did not want to have anal sex with him. After choking, he also slammed her on the ground and she also hit herself on the door by the garage. Four days after these events, April 7th and April 8th, she was examined by a doctor. That was on April 12th. At that examination, the doctor noticed broken blood vessels in the back of her oral cavity consistent with violent oral sex. The doctor also testified that she noted a left bruise on her arm consistent with the fact that four days prior, the victim testified that she was thrown on the ground and choked. So there was physical corroboration regarding the allegations and the testimony provided by the victim. The state does not want to re-victimize this individual who testified at trial in front of the jury about these heinous acts the defendant committed against her. Does this court have any questions regarding any of the six counts? There were many counts, different time periods, and different manners in which this crime was committed. Counts 1, 2, 3, and 6 were alleged to have committed by the means of sexual penetration. It was in the time period of June 2017. That was following a Baltimore trip with the defendant and the victim. They returned back. They were residing in the Edward Green House. AZ testified when they returned that they were naked in bed, told her to take her clothes off, get in bed with him. Defendant made her put his penis in her mouth and then the victim got on top of the defendant and had her insert his penis inside her vagina so it would hurt less. That are the elements alleged within Counts 1 and 2. Penetration between the penis and the vagina in June 2017. This is consistent throughout the other counts, Counts 6 and 3, Counts 4 and 5, Counts 7. The victim testified to the elements necessary for the state to prove the allegations as alleged within the manner the state alleged them to be. Does this court have any questions rather than regurgitate the awful, awful acts, sexual acts committed against this poor victim? Does this court have any clarification on her testimony at trial? And if it failed to prove the elements of the offense? One quick question. Remind me, did the jury come back with a guilty on all of the counts? Yes. Guilty on Counts 1 through 6, which is the predatory criminal sexual assault. And guilty on Count 7, aggravated domestic battery. But yes, I'd like to emphasize the victim testified to all of the acts, all of the time periods. There was testimony regarding her age. She was under 13 at the time the offenses were alleged to have happened. The defendant was born in March of 1990. He was over the required age under the statute. All the elements were testified to by the victim, the victim's mother. There was corroboration, physical corroboration by the doctor regarding the specific counts, Counts 6 and 3, which was the April 7th incident that the state emphasized earlier in its argument. But yes, the testimony was there. The evidence was there. The state needs this court and implores this court not to re-weigh the evidence, not to substitute its judgment of the fact for the credibility determinations. The jury did its job. The jury took its time. The evidence was there. Any further questions? Justice Moore? No questions. Okay. Thank you. Thank you. The people of Civil Illinois respectfully request that this court affirm defendant's convictions. Thank you. Thank you. I'm going to ask you right away about the CAC tape. Am I correct? Yes. Was that by agreement of the state or was that by order of the court? Getting it supplemented? Correct. Agreement of the state. And even crazier than that, I didn't notice that the exhibit wasn't there because I could quote that entire thing from having done the trial and I already had all that, that when they pointed it out, I almost had a stroke that it wasn't in there. We got it from or we had Richland County supplement it after much argument about they don't have to and then it showed up blank. That would have been good. But you have it. Yes. It was agreed to by the state. I want to make sure. I still have a copy of it and the Attorney General certified that, yes, that is the actual video and it was supplemented. All right. Thank you very much. Yeah. And that was a mess. It was a situation for sure. But it is there. And we waited for a while for the state to have the opportunity to amend their brief and they didn't do that. So that's where it ended. The argument just made that one witness is sufficient to support a conviction. Of course it is. That witness needs to be credible. That's the basis of the entire thing. In this case, you can't say that it is. But she also admitted she was a liar by lying to her mom and any number of other things. If she was credible, we would have no argument on this point, nothing about what she said was credible at all. I do want to point out, though, about the standard here is it sometimes feels a little bit like a rubber stamp. The jury said it, so that's that. And that is the decision in most of these cases. But this court also, two years ago, last year, overturned a bench trial verdict on reasonable doubt where the child said, I don't know for sure if I remember what happened. It was people being blue. I was an appellate counsel, but I could have been because I was trial counsel on that one too. You reversed it outright. This child also said, I don't know for sure about some of the things that she had alleged. So it's something that is not off the table. That's why you get the big bucks. You've got to do the hard things here. And digging into the details of what was said, what wasn't said, those things are significant and specific to this case that you don't see in every one of these cases. So I just urge you, I beg you to actually look deep at the many, many contradictions there are. I would also point out, when talking about Dr. Winters, she mentioned, obviously her testimony was a big deal, talking about those petechiae or whatever they are. I did want to point this out. She's had sex assault exams for 40 years, and she didn't know what those were when she saw it. And she, I think she consulted with some other people. I think that was her testimony. And that came to her that that's probably what it was. But she also testified, would still be there after four or five days. That's pretty important, too. So who knows what it was? We don't know. I don't know that that's corroborating. So my light's on again. Are there any other questions? If not, just repeat my request that you reverse his convictions. What was the name of that case that you cited? People v. Blue? Blue. David Blue. You wouldn't happen to know who was on the family? No. Sure don't. I was just so happy about it, I just kind of took the win and went on. So, yeah. It was out of Williamson County. Thank you very much. Well, I was busy trying to think. Was it you? I may have been. It was a predatory case. A doctor's help. Okay. Sounded familiar. Do you have any final questions? I don't. Thank you. This is important. All right. Thank you, Counsel. Thanks. We will obviously take matter under advisement. We will issue an order in due course. Did you...